**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LILLIAN PELLEGRINI, Trustor/Trustee**<br><br>Plaintiff,<br><br>v.<br><br>**MARLEEN MERCHANT,** *et al.***,**<br><br>Defendants. | 1:16-cv-01292-LJO-BAM<br><br>**MEMORANDUM DECISION AND ORDER DENYING:**<br><br>**PLAINTIFF'S MOTION TO DISQUALIFY (Doc. 14, 54)**<br><br>**PLAINTIFF'S MOTION TO TRANSFER VENUE (Doc. 54)**<br><br>**PLAINTIFF'S MOTION TO STAY (Doc. 53)** |

**I. INTRODUCTION**

Pending before the Court are Plaintiff's motion to transfer this action to the Northern District of California (Doc. 54), motion to stay the proceedings (Doc. 53), and what the Court construes as a motion to disqualify the undersigned (Doc. 14, 53). A hearing on these motions was held on January 13, 2017; Lillian Pellegrini appeared personally, and the Defendants appeared telephonically. For the reasons set forth below, Plaintiff's motions to transfer the case, to stay proceedings, and to disqualify the undersigned are DENIED.

1

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

This case stems from a trust administration dispute between Lillian Pellegrini ("Lillian") and her daughter, Marleen Merchant, which was decided in a probate proceeding conducted by the Fresno California Superior Court. On June 18, 1999, Lillian and her husband Angelo created the Angelo John Pellegrini and Lillian Dorothy Pellegrini Revocable Living Trust (the "1999 Trust"). (Doc. 1, ¶ 1.) The Trust stated that Angelo and Lillian have two children – their daughters, Beverly Jean Pellegrini (Beverly) and Marlene – who would receive the remainder of the Trust Estate in equal shares after Angelo and Lillian died. In 2008, following Angelo's death, Lillian became the sole trustee of the Trust.

In July 2010, Marleen filed two petitions in the Fresno County Superior Court ("trial court") seeking to remove Lillian as trustee of the Family Trust that Marleen contended was created under the 1999 Trust, and seeking recovery of property Marleen asserted belonged to the Family Trust.

On June 17, 2014, the trial court granted a motion to bifurcate the trial and determined two issues would be tried first: (1) whether the Family Trust was required to be funded after Angelo's death, and (2) whether the title to real property in San Francisco maintained its joint tenancy characterization after being transferred into the 1999 Trust. On January 14, 2015, a trial was conducted on these two issues, and the Court determined by clear and convincing evidence that the Family Trust was required to be funded following the death of Angelo and should have been funded at that time with a minimum of $544,386.91. The trial court also found that the San Francisco real property did not maintain its joint tenancy characterization after being transferred to the 1999 Trust.

In May 2015, after holding a hearing, the trial court ordered the removal of Lillian as trustee of the Family Trust for failing to fund it after Angelo's death, and it appointed the Fresno County Public

---

[1] The factual background section was drawn from Plaintiff's complaint, the order issued by the Fifth District Court of Appeal on October 30, 2016, in *Merchant v. Pellegrini*, 2016 WL 6426389 (unpublished), and the Fresno Superior Court's public docket. This background section does not constitute or contain any formal findings of disputed fact and is meant only to provide context.

Guardian as the successor trustee of the Family Trust. The May 2015 order also directed Lillian to fund the Family Trust in the amount of $544,386.91, and to pay this amount to the Fresno County Public Guardian as the Successor Trustee of the Family Trust ("Successor Trustee"). As to all remaining issues, a one-day court trial was set for August 25, 2015.

On trial of the remaining issues in August 2015, the trial court found Lillian wrongfully and in bad faith took assets belonging to the Family Trust, and double damages were awarded pursuant to California Probate Code § 859 which Lillian was ordered to the Successor Trustee. In October, the Successor Trustee filed an ex parte application seeking to enforce the trial court's judgment requiring Lillian to pay damages to the Successor Trustee.

On October 14, 2015, Lillian filed a document with this Court entitled "Request for Transfer to Federal Court 28 U.S.C. § 1441," which was construed as a notice of removal of the trial court proceedings over which the Court determined it had no jurisdiction, and the case was remanded to the Fresno County Superior Court. (1:15-cv-01564-LJO-EPG, Doc. 1.)

On October 20, 2015, the trial court granted the Successor Trustee's motion and froze Lillian's accounts at UBS Financial Services until further order and required UBS Financial Services to transfer the sum of $1,528,271.44 to the Successor Trustee. Lillian then appealed the trial court's orders to the California Fifth District Court of Appeal.

In August 2016, Lillian filed suit in the U.S. District Court for the Northern District of California naming Fresno County, Fresno County Counsel, Fresno County Public Guardian, the Superior Court of Fresno County, UBS Financial Services, Bank of NY Mellon, Comerica Inc., and Weintraub Tobin as defendants (collectively, "Defendants"). On August 30, 2016, the Northern District ordered that the case be transferred to the Eastern District as Lillian's claims arose out of events that occurred in Fresno, California. (Doc. 9.)

On October 31, 2016, Lillian filed a document entitled "Motion to Notify Court of a Conflict of Interest by Lillian Pellegrini," and a second document entitled "Notice – Federal Jurisdiction Under

Federal Rule of Civil Procedure 60; Intervenor by Right Under Federal Rule of Civil Procedure 24; Joinder Under Federal Rules of Civil Procedure 19." (Docs. 14, 15.)

On November 3, 2016, Lillian was ordered to serve the complaint, and Lillian's motion entitled "Notice – Federal Jurisdiction Under Federal Rule of Civil Procedure 60; Intervenor by Right Under Federal Rule of Civil Procedure 24; Joinder Under Federal Rules of Civil Procedure 19" was held in abeyance until such time as the Defendants were served and the motion was properly noticed. (Doc.16.) Between December 27, 2016, and November 9, 2017, each Defendant filed a motion to dismiss. (Docs. 41, 42, 43, 44, 45, 46.) On January 12, 2017, Lillian filed a motion for Venue Change and a Motion to Stay the proceedings. (Docs. 53, 54.)

### III. ANALYSIS

**A.  Plaintiff's Motion to Disqualify is DENIED**

As a practical matter, Plaintiff's motion to disqualify the undersigned from hearing this case shall be considered first. Not only is this a threshold issue, but it is one of the bases on which Plaintiff predicates her motion to transfer venue. In her "Motion to Notify Court of a Conflict of Interest," Plaintiff maintains she originally filed her complaint in the Northern District because she did not want "the risk of any conflict of interest or bias." (Doc. 14, 3:5-6.) Plaintiff asserts that

> [b]ecause some Magistrate Judges and District Judges have had clear connections to Fresno Superior Court and Fresno Public Offices and may have former affiliations with law firms with conflicts of interest through any of the parties, or are connected through activities such as the NBI series (attached as Exhibit 1) that are outside their current professional functions that put justices, judges, and magistrates in contact with state court judges and members of law firms with conflicts of interest with any of the parties, there is a perception that these conflicts of interest may give rise to a lack of impartiality, and it is already a certainty that there is a reasonable basis of lack of impartiality by a diverse group of the public.

(Doc. 14, 6:22-7:1.) Plaintiff maintains the undersigned's impartiality could be reasonably questioned because of his employment as a "Clerk to a Fifth District State Appellate Judge." (Doc. 54, 3:4-10.) Plaintiff also contends Magistrate Judge McAuliffe, who is assigned to this case, should be disqualified because she served as a panel member on a continuing legal education seminar held by the National

4

Business Institute along with Fresno County Superior Court Judge Jane Cardoza, who presided over the Fresno County Superior Court proceedings in *Merchant v. Pellegrini*.

"Section 455 imposes an affirmative duty upon judges to recuse themselves." *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir.1983). It provides in relevant part as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practice law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
> >
> > (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy
> > . . .

28 U.S.C. § 455(a) and (b).

Section 455(a) requires disqualification for the appearance of partiality. Section 455(b)(1), in contrast, requires disqualification if a judge has a personal bias or prejudice for or against a party. *See Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1045-46 (9th Cir.1987). As such, section 455(b)(1) "simply provides a specific example of a situation in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (citing *United States v. Olander*, 584 F.2d 876, 882 (9th Cir. 1978)).

What matters under section 455(a) "is not the reality of bias or prejudice but its appearance[,]" and the test for disqualification under section 455(a) is an objective one. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Disqualification is warranted if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quotation omitted). Under this objective standard, the

"reasonable person" is not "hypersensitive or unduly suspicious," and "is not a 'partly informed man-in-the-street[.]'" *Id*., 519 F.3d at 913-14.  Rather, the reasonable person is a "well-informed, thoughtful observer[,]" and is "someone who 'understand[s] all the relevant facts' and has examined the record and the law." *Id*. (quotation omitted).

In considering disqualification motions, "judges are not to recuse themselves lightly[,]" and should participate in cases assigned if there is no legitimate reason for disqualification.  *United States v. Sierra Pacific Industries*, 759 F. Supp. 2d 1198, 1205 (E.D. Cal. 2010) (quoting *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000)); *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008).  In other words, judges "must not simply recuse out of an abundance of caution when the facts do not warrant recusal.  Rather, there is an equally compelling obligation not to recuse where recusal is not appropriate." *Sierra Pacific Industries*, 759 F. Supp. 2d at 1200-01(citing *Holland*, 519 F.3d at 912).

In 1979, the undersigned worked as a law clerk to the Honorable Robert F. Kane of California's First District Court of Appeal in San Francisco.  The undersigned was appointed to the Fresno Superior Court bench in 1990 where service occurred until 1999; appointment then was as a United States Magistrate Judge for the U.S. District Court for the Eastern District of California.  Plaintiff does not assert how the Court's impartiality might reasonably be questioned due to service as a law clerk in Justice Kane's chambers nearly 40 years ago or how this creates the appearance of bias in this matter.  Similarly, service on the Fresno County Superior Court nearly two decades ago does not create an appearance of bias in handling this matter where the complaint pertains to proceedings occurring long after departure from the Superior Court.  Plaintiff's vague and conclusory assertions that "some Magistrate Judges and District Judges" have "clear connections to the "Fresno Superior Court and Fresno Public Offices" does not demonstrate that the Court's impartiality might reasonably be questioned in presiding over this matter.  As such, the undersigned declines to recuse from this case.

As to Plaintiff's claims that Magistrate Judge McAuliffe has a conflict of interest that requires her disqualification, this issue must be decided separately by Judge McAuliffe.  *United States v.*

6

*Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978) ("only the individual judge knows fully his own thoughts and feelings and the complete context of the facts alleged").

**B.     Motion to Transfer Venue**

Plaintiff requests the Court re-transfer her case to the Northern District of California, which Defendants oppose.

To support a motion for transfer of venue, the moving party must establish "'that venue is proper in the transferor district; that the transferee district is one where the action might have originally been brought; and that transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.'" *Vu v. Ortho-McNeil Pharm., Inc*., 602 F. Supp. 2d 1151, 1155-56 (N.D. Cal. 2009) (quoting *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp*., 820 F. Supp. 503, 506 (C.D. Cal. 1992)).

Title 28, Section 1391 governs venue generally, and provides, in relevant part, that a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. For purposes of venue, corporations are deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(2). In a multi-district state such as California, a corporation is deemed to reside in any district in that state within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state. 28 U.S.C. § 1391(d).

This case was originally filed in the Northern District, but it was transferred in August 2016 after Magistrate Judge Kandis Westmore determined venue was not proper there. (Doc. 9.) Judge Westmore's decision is subject to the law-of-the-case doctrine, which provides that when a court decides on a rule of law, that decision continues to govern the same issues in subsequent stages in the

1  same case. *Arizona v. California*, 460 U.S. 605, 618 (1983); *Moore v. Jas. H. Matthews & Co.*, 682
2  F.2d 830, 833 (9th Cir. 1982). "Federal courts routinely apply law-of-the-case principles to transfer
3  decisions of coordinate courts." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816
4  (1988). "Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions
5  than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions
6  of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* Courts, in an
7  exercise of discretion, may depart from the law of the case where: "1) the first decision was clearly
8  erroneous; 2) an intervening change in the law has occurred; and 3) the evidence on remand is
9  substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise
10 result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

11  None of the factors identified in *Alexander* applies here, and the law-of-the-case doctrine will be
12 applied as to Judge Westmore's decision. The original order finding venue improper in the Northern
13 District was not clearly erroneous. Plaintiff did not plead sufficient facts to establish UBS's residency
14 in the Northern District beyond an allegation that UBS had a branch office in San Francisco. 28 U.S.C.
15 § 1391(c)(2), (d). No change in law has occurred since Judge Westmore's August 30, 2016 order, nor
16 has there been any change in the relevant circumstances.

17  Finally, there is no manifest injustice in applying the doctrine here. Venue is proper in this
18 district as a substantial part of the events giving rise to the claims occurred in Fresno, and Plaintiff does
19 not assert otherwise. 28 U.S.C. § 1391(b)(2). Plaintiff failed to file a motion for reconsideration of
20 Judge Westmore's order regarding venue, and filing a motion to change venue now is both untimely
21 and prejudicial to Defendants. As the Supreme Court noted in *Christianson*, application of the doctrine
22 is particularly warranted in transfer cases to avoid placing the litigants on a hamster wheel of never-
23 ending litigation of this issue. Plaintiff's motion to change venue is DENIED.

24
25

**C.    Motion to Stay Proceedings**

Plaintiff also filed a "Motion for Stay" seeking a stay of proceedings while her "Motion of Intervenor by Right or Compulsory Joinder of Beverly Pellegrini as Plaintiff" and the "Motion for Change of Venue" are pending. When considering a stay of proceedings, courts consider the prejudice to the non-moving party of imposing a stay, the hardship or inequity a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In considering Plaintiff's motion to change venue, the Court continued the hearings on Defendants' motions to dismiss until March 20, 2017, giving Plaintiff sufficient opportunity to oppose those motions and mitigating any hardship or inequity if the action is not stayed. Plaintiff's motion regarding joinder/intervenor will not be considered until Defendants' motions to dismiss have been decided as those implicate jurisdictional issues that must be handled prior to any motion for intervention/joinder.[2] Resolving the motions to dismiss first avoids any prejudice to Defendants resulting from delay and conserves judicial resources by resolving key jurisdictional issues that may moot issues of intervention. Plaintiff's motion to stay the proceedings is therefore denied.

///
///
///
///
///
///
///
///

---

[2] Plaintiff did not properly notice or set a hearing her "Motion of Intervenor."

9

## IV. CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to disqualify the undersigned is DENIED;

2. Plaintiff's motion to change venue is DENIED;

3. Plaintiff's motion to stay the proceedings is DENIED; and

4. Plaintiff's motion to disqualify Magistrate Judge McAuliffe (Doc. 14) is set for hearing before Judge McAuliffe on March 2, 2017, at 10 a.m. in Courtroom 8.

IT IS SO ORDERED.

Dated:  **February 13, 2017**          /s/ Lawrence J. O'Neill
                                       UNITED STATES CHIEF DISTRICT JUDGE